IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Campbell,                           :
                              Petitioner    :
                                            :
                                            :   No.  1031 C.D. 2016
            v.                              :
                                            :   Submitted:  November 18, 2016
Workers' Compensation  Appeal               :
Board (City of Philadelphia),               :
                              Respondent     :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  March 3, 2017


        William Campbell (Claimant) petitions for review of the June 10, 2016, order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) denying the claim petition filed against the City of Philadelphia (Employer).


**Facts and Procedural History**

        Claimant filed a claim petition on October 5, 2012, alleging "direct exposure to IARC Group 1 carcinogens while working as a firefighter."  (WCJ's Finding of Fact (F.F.) No. 1.)  Although there was no injury description in the claim petition, Claimant amended the claim petition orally at a hearing before the

WCJ so that the description of injury included, "melanoma of the right lower leg…[and] melanoma of the low back." (WCJ's F.F. No. 1, fn 1.) Employer filed a timely answer denying all material allegations as well as raising numerous affirmative defenses. (WCJ's F.F. No. 2.)

Claimant testified by deposition in the proceedings before the WCJ, confirming just over thirty-five years of service with Employer's Fire Department, starting in January of 1969 and retiring on March 30, 2004. (WCJ's F.F. No. 16(a), (r).)

Claimant began service as a firefighter and progressed in promotions to lieutenant, captain, and battalion chief, working in each position in a firehouse and not an office. His service resulted in his exposure to diesel fuel emissions, smoke and fumes from house fires, office building fires, refinery fires, automobile and truck fires, and fires of many other kinds, and second-hand smoke from fellow firefighters at fire houses where he served. He never smoked but his wife did and does. (WCJ's F.F. No. 16.)

Claimant testified that he only occasionally wore a self-contained breathing apparatus (SCBA) because even when available, the devices impeded communication and made it "more dangerous climbing the ladder and operating up there." (WCJ's F.F. No. 16(m).)

Claimant and his family regularly vacationed at the beach in Sea Isle City, New Jersey, for twenty-three years, but he asserted that he always protected himself from sun exposure because he was a "fair haired Irishman…[with] red hair and freckles." (WCJ's F.F. No. 16(w), (gg).)

There was no evidence that Claimant suffered from or was treated for any cancer during his career with Employer. He was first diagnosed with cancer in

2

the form of melanomas in January of 2007, October of 2008, and October of 2011, and following surgical excision in each instance, there was no spread of the disease. (WCJ's F.F. No. 16 (b), (p), (q), (r).)

Claimant testified that until he received a letter in October of 2012 from Claimant's counsel that enclosed a report from Dr. Singer, he had no idea that his cancer and his service as a firefighter were related. (WCJ's F.F. No. 16(s).)

In support of his claim petition, Claimant offered a report from Dr. Singer dated September 19, 2012. Board-certified in internal medicine (with a subspecialty in hematology and oncology), Dr. Singer never examined Claimant but did review an array of records as well as affidavits from Claimant and records from Claimant's family and treating physicians. Dr. Singer concluded, "it is my opinion that Mr. Campbell's exposures to carcinogens while working for the City of Philadelphia was [*sic*] a substantial contributing factor in the development of his melanomas…I hold all my opinions within a reasonable degree of medical certainty." (WCJ's F.F. No. 18, quoting Dr. Singer's September 19, 2012, report, R.R. at 30.)

Claimant also offered a report from Virginia Weaver, M.D., dated March 28, 2012. Board-certified in occupational medicine and internal medicine, Dr. Weaver did not examine Claimant either, and she provided an opinion that "a wide range of chemicals classified as known or probable human carcinogens by the International Agency for Research on Cancer (IARC)…are found in smoke from burning structures, including buildings and automobiles." She also wrote that the protection provided by equipment worn by firefighters is incomplete. She also stated that exposure to probable human carcinogens was greater in the past, when it was not known that carcinogen exposure continues in the "overhaul" phase of

3

extinguishing a blaze and when firefighters routinely removed their respiratory protection to better assess the potential for re-ignition. (WCJ's F.F. Nos. 20, 21.)

Preliminarily, Employer argued for dismissal of the claim petition based on the following grounds. First, Employer argued that Claimant provided inadequate notice because the purported notice was a letter from Claimant's counsel dated November 2, 2011 (Claimant's exhibit C-9), and that letter preceded any written notice by any medical professional of the work-relatedness of the claim. The report from Barry Singer, M.D, dated September 19, 2012, connected Claimant's injury and disability to his job as a sanitation laborer. (Reproduced Record (R.R.) at 27-30.)

Next, Employer argued preliminarily that the claim petition should be dismissed because Dr. Singer's testimony should be precluded as incompetent under Rule 702 of the Pennsylvania Rules of Evidence and *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Focusing solely on this preliminary matter, depositions of Dr. Singer and Tee Guidotti, M.D. (testifying on behalf of Employer) yielded twenty-six pages of single-spaced findings of fact by the WCJ, who ruled that 'the opinions rendered by Dr. Singer do have 'general acceptance in the particular field in which it belongs,' and therefore the [Employer's] *Frye* motion is denied."[1] (WCJ's F.F. No. 15.)

---

[1]As our Supreme Court stated in *Grady v. Frito–Lay, Inc.,* 839 A.2d 1038 (Pa. 2003): "The *Frye* test ... is part of [Pennsylvania Rule of Evidence 702 and u]nder *Frye,* novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community." *Id.* at 1043–44. The proponent of scientific evidence must demonstrate that the "methodology an expert used is generally accepted by scientists in the relevant field as a method for arriving at the conclusion the expert will testify to at trial." *Id.* at 1045. However, the proponent of the evidence is not required to "prove that the scientific community has also generally accepted the expert's conclusion." *Id.* Also, the testimony must be

**(Footnote continued on next page…)**

4

Employer did not offer any testimony in its case in chief, but did present materials from two physicians who treated or assisted in treating Claimant. In his progress note of January 29, 2007, Stephen Hess, M.D., discussed a biopsy on Claimant's right calf on January 17, 2007, which revealed a melanoma where Claimant told him he had had a mole present since childhood. The mole had recently become darker but did not change in size. Claimant reported to Dr. Hess "a history of extensive sun exposure throughout his lifetime as he is an avid golfer, fisherman, and spends a significant amount of time at the shore." Dr. Hess recommended surgical excision and "avoidance of unnecessary exposure including use of sun-protective clothing and sunscreen." (WCJ's F.F. No. 23.)

Employer also presented a report from Diane Hershock, M.D., dated at an unspecified day in March of 2007. She confirmed treatment of the "recently diagnosed melanoma," and noted Claimant's "extensive sun exposure history as he is an avid golfer and fisherman. He has had multiple blistering burns in the past and did have a nevus on his lower leg which he had for years." On physical examination, Dr. Hershock noted the surgical scar on Claimant's right posterior calf as well as "severe freckling in the sun exposed areas." She concluded, "We also had a lengthy discussion concerning his lengthy sun exposure and the alteration that will need to occur in his lifestyle since he remains an avid golfer and fisherman." (WCJ's F.F. No. 24.)

---

**(continued…)**

given by "a witness who is qualified as an expert by knowledge, skill, experience, training or education...." *Id.*

In his decision and order circulated January 7, 2015, the WCJ implied that Claimant neither knew nor should have known of the "possible relationship to his employment" until August 26, 2011 (68 days before the notice letter) and so overruled Employer's objections and found that notice was given properly by means of the letter of November 2, 2011, pursuant to Section 311 of the Workers' Compensation Act (Act).[2]  Otherwise, the WCJ found the Claimant credible, and found Dr. Weaver credible,

> as to the limited issues addressed in her report.  However, this Judge finds her report provides no material evidence as to the claim at issue, specifically William Campbell….Dr. Weaver…never examined the Claimant, never reviewed any medical record relevant to the Claimant; never reviewed records from the City of Philadelphia Fire Department[,] and performed no research relevant to the Commonwealth of Pennsylvania. Rather, her reports contained anecdotal evidence relative to firefighters in Virginia, Colorado and Maine.

(WCJ's F.F. Nos.  4, 5, 22.)

The WCJ rejected the reports of Dr. Singer as "woefully insufficient to establish a causal connection between the specific duties of the Claimant as a firefighter for the City of Philadelphia and his diagnosis of melanoma without the benefits of the presumption set forth in section 301(f)…"  (WCJ's F.F. No. 25.)

Specifically, in rejecting the findings and conclusions of Dr. Singer, the WCJ, *inter alia*, considered the following:

> (b) He failed to perform a physical examination of the Claimant.

---

[2] Act of June 2, 1915, P.L.736, *as amended*, 77 P.S. §631.

6

(c) He failed to obtain an occupational history from the Claimant, which included a tour of duty in the Army and work as a pipefitter at the Philadelphia Navy Yard prior to entering the fire department.

(d) He failed to address, in any form or fashion, the interplay between the Claimant's extensive exposure to sun while **NOT** performing the duties of a firefighter and his alleged exposure while performing his duties as a City of Philadelphia firefighter.

(e) He failed to review complete medical records for the Claimant. He did not request, obtain or review medical records which pre-date the diagnosis of malignant melanoma nor did he review current medical records for the treatment being received by the Claimant….

(f) He based his conclusion of 'substantial contributing factor' upon limited facts obtain [*sic*] from a one page affidavit.

(WCJ's F.F. No. 25.) (Emphasis in original.)

Accordingly, while the WCJ found Claimant to have thirty-five years of service as a firefighter after having undergone and passed a pre-employment physical examination, she found he was not entitled to the presumption of Section 301(f) of the Act, 77 P.S. §414, because he failed to file his claim petition within 300 weeks from Claimant's last date of employment as a firefighter. Rather, Claimant did not file his petition until just over 444 weeks from his last date of employment as a firefighter (March 30, 2004, until October 5, 2012). (WCJ's F.F. Nos. 26, 27, 28, 29.)

7

Claimant appealed to the Board, which affirmed. Neither of the preliminary matters was the subject of any appeal to the Board or this Court. Claimant now appeals to this Court.[3]

Claimant has narrowed his discussion to two issues: (1) "Whether the [Board] committed an error of law by misinterpreting Section 301(f) of the Act to require a Firefighter to file a petition within 300 weeks to claim benefits for cancer pursuant to Section 108(r) of the Act with the rebuttable presumption of compensability;" and, (2) "Whether the Discovery Rule applies to extend the time that a Firefighter diagnosed with cancer pursuant to Section 108(r)[4] has to file a Claim Petition if, as found by the [Board], Section 301(f) creates a limitation on the time a Firefighter has to file a Petition."

## Discussion
## The Rebuttable Presumption

Section 301(f) of the Act lays out the particulars for cancer claims by firefighters under Section 108(r) of the Act. The requirements include at least four years of continuous firefighting service, having "successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer," and a "cancer…which is caused by exposure to a known

---

[3] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

[4] Section 108 was added by the Act of October 17, 1972, P.L. 930, No. 223.

carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer."[5]   If a professional firefighter meets these prerequisites, the Act provides as follows:

> Notwithstanding the limitation under subsection (c)(2) with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, claims filed pursuant to cancer suffered by the firefighter under section 108(r) may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease.  The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks.

77 P.S. §414.

This Court has held that the three hundred weeks for the presumption in Section 301(f) is measured by the time between (1) Claimant's "last date of employment in an occupation or industry to which the claimant was exposed to the hazards of disease," and, (2) the date a claim petition is filed.  *Fargo v. Workers' Compensation Appeal Board (City of Philadelphia)*, 148 A.3d 514, 520 (Pa. Cmwlth. 2016), and, *Hutz v. Workers' Compensation Appeal Board (City of Philadelphia)*, 147 A.3d 35, 52-53 (Pa. Cmwlth. 2016).

Here, Claimant's last date of employment was March 30, 2004.  He filed the claim petition on October 5, 2012, just over 444 weeks later.  Thus, under

---

[5] 77 P.S. §§ 414 and 27.1.

9

the terms of the statute, Claimant was barred from taking advantage of the presumption set forth in Section 301(f) of the Act.

## Discovery Rule Does Not Apply

Claimant's next argument on appeal is that "[i]f §301(f) is found to be a limitations period, Petitioner avers that the [Board] committed an error by [*sic*] law by failing to apply the discovery rule applicable to the limitations period for occupational disease claims made pursuant to §301(c)(2) of the Act." (Petition for Review, ¶5.)

In other words, Claimant argues that the discovery rule means that if Claimant filed his claim petition within three years after learning that his cancer may be compensable under the Act, then the time is measured under Section 315 of the Act, 77 P.S. §602. Thus, Claimant's assertion is that the three-year limitation period is tolled, that is, the clock does not start ticking until he knew or should have known of a work-related disease. Here, that means that because Claimant learned of the possibly work-related nature of his cancer at some unspecified date in October of 2012 (WCJ's Finding of Fact No. 16(s)) and he filed his claim petition on October 5, 2012, then his claim petition certainly is timely.

Claimant questions why firefighters diagnosed with cancer have two filing limitations. *See,* Brief for Petitioner, page 23, fn 5. Here, Claimant conflates the statute of limitations in Section 315 with the statute of repose in Section 301(f). They are not contradictory but complementary. Claimant's argument was rejected expressly by this Court in *Fargo*, which we will quote at length because the reasoning is just as dispositive in the present case. In *Fargo*, we stated that:

> [T]he 600-week limitations period of Section 301(f) acts as a statute of repose and is not subject to a discovery rule under *Price* [*v. Workmen's Compensation Appeal Board (Metallurgical Resources)*, 626 A.2d 114 (Pa. 1993)]. Our Supreme Court has explained the difference

10

between a statute of limitations and a statute of repose as follows:

> A statute of limitations is procedural and extinguishes the remedy rather than the cause of action. A statute of repose, however, is substantive and extinguishes both the remedy and the actual cause of action. Generally, the critical distinction in classifying a statute as one of repose or one of limitations is the event or occurrence designated as the "triggering" event. In a workers' compensation claim, the common triggering event for statute of limitations purposes is the disability of the employee, which defines the accrual of the action. That is the point at which all the elements of the action have coalesced, resulting in a legally cognizable claim.
>
> A statute of repose, however, typically sets the triggering event as something other than the point at which the cause of action arises. Within the workers' compensation scheme, the common triggering event is the work-related incident/injury, regardless of whether disability results at that time. Thus, a statute of repose may also prevent the accrual of a cause of action where the final element necessary for its creation occurs beyond the time period established by the statute. At the end of the time period specified in the statute, the cause of action ceases to exist, unless the claimant can bring himself within any tolling provision enunciated in that statute.

*Westinghouse Electric Corp./CBS v. Workers' Compensation Appeal Board (Korach)*, 584 Pa. 411, 883 A.2d 579, 588 n.11 (2005) (citations omitted). The "triggering event" for the purposes of Section 301(f) is not the date of injury or disability, as in Section 315, but rather the claimant's last day at work with exposure to a known Group 1 carcinogen. A firefighter who contracts

cancer may file a claim under Section 108(r) within 300 weeks of the last workplace exposure and take advantage of the statutory presumption of compensability. In addition, the General Assembly provided a Section 108(r) claimant an additional 300 weeks to file a claim albeit without the benefit of the statutory presumption. However, once 600 weeks elapse from the date of the last workplace exposure, the cause of action under Section 108(r) ceases to exist.

Claimant's argument that the 600-week limitation period of Section 301(f) was intended by the General Assembly to supersede Section 315 and *Price* is unsupported by the text of the Act as neither Section 301(f) nor Section 108(r) state that Section 315 is inapplicable to Section 108(r) claims. Furthermore, the 600-week limitation of Section 301(f) does not conflict with the application of the discovery rule to Section 315 as the three-year limitations period of Section 315 may still be tolled in Section 108(r) cases where the claimant was not aware of the nature of his occupational disease, provided that the claim is filed before the expiration of the 600-week period. However, simply because a discovery rule is applicable to Section 315 does not provide a basis for application of a discovery rule to Section 301(f), particularly where diagnosis and knowledge that a condition is work-related are irrelevant to the triggering event of the Section 301(f) limitations period, which is the last date of workplace exposure.

148 A.3d at 521-522.

## Conclusion

Because *Fargo* is dispositive of the issues raised by Claimant, the Board acted properly in affirming the WCJ's decision.

12

Accordingly, the order of the Board is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Campbell,                          :
            Petitioner                     :
                                           :   No.  1031 C.D. 2016
            v.                             :
                                           :
Workers' Compensation  Appeal              :
Board (City of Philadelphia),              :
            Respondent                     :

## ***ORDER***

AND NOW, this 3rd day of March, 2017, the order of the Workers'

Compensation Appeal Board dated June 10, 2016, in the above matter is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge