IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

| | | |
|---|---|---|
| CITY OF JOHNSTOWN, | : | No. 28 WAP 2020 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered May 6, |
| | : | 2020 at No. 1156 C.D. 2019, |
| v. | : | affirming the Order of the Workers' |
| | : | Compensation Appeal Board dated |
| | : | July 30, 2019 at No. A18-0040. |
| WORKERS' COMPENSATION APPEAL | : | |
| BOARD (SEVANICK), | : | ARGUED: April 13, 2021 |
| | : | |
| Appellees | : | |

## OPINION

**JUSTICE DONOHUE**  **DECIDED: JULY 21, 2021**

Section 301(c)(2) of the Workers' Compensation Act ("the Act") provides that for disability or death caused by an occupational disease to be compensable, the death or disability must occur within 300 weeks of the claimant's last date of employment in the occupation that exposed the claimant to the conditions that led to the disease. 77 P.S. § 411(2). Pursuant to Section 108(r), claims made by the firefighters for certain types of cancer fall under the Act. *See id.* § 27.1. These firefighter cancer claims are subject to Section 301(f), which provides that "[n]otwithstanding" the 300-week requirement in Section 301(c)(2), firefighter cancer claims made pursuant to Section 108(r) "may be made within [600] weeks after the last date of employment" in an occupation that

exposed the firefighter to the cancer-causing hazards. *Id.* § 414. Appellant, the City of Johnstown ("Johnstown"), contends that a party asserting a firefighter cancer claim must satisfy the requirements of both Section 301(c)(2) and Section 301(f) to establish a viable claim. For the reasons that follow, we disagree and conclude that the time for filing a Section 108(r) firefighter cancer claim is governed by Section 301(f) alone. We therefore affirm the ruling of the Commonwealth Court.

## I.     Statutory Framework

To center our discussion, we briefly review the pertinent statutory provisions. As referenced above, Section 301(c)(2) of the Act provides that a compensable injury includes death or disability caused by the occupational diseases enumerated in Section 108. 77 P.S. § 411(2). Section 301(c)(2) also requires that when a claim is based on an occupational disease, the disability or death must occur within 300 weeks of the last date of employment in which the claimant was exposed to the disease-causing conditions. *Id.* In 2011, the General Assembly enacted Act 46,[1] which amended the Act so as to provide coverage for cancers traceable to firefighting. To that end, Act 46 amended Section 108 to include "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer[]" ("IARC") as an occupational disease. *Id.* § 27.1(r). In addition to adding cancer suffered by firefighters to the list of occupational diseases, through Act 46 the General Assembly also enacted Section 301(f), "Compensation for cancer suffered by a firefighter." This provision, which we discuss at length infra, establishes the criteria that must be met for a claim of firefighter

---

[1] Act of July 7, 2011, P.L. 251.

cancer raised under Section 108(r) to be compensable under the Act. *See id.* § 414.[2] In addition to the filing period contained therein, Section 301(f) requires that the firefighter-claimant must have served for four or more years in continuous firefighting, must establish direct exposure to a carcinogen of the class referred to in Section 108(r), and must have passed a physical examination that revealed no evidence of cancer prior to engaging in firefighting duties or asserting a claim thereunder. *Id.*

## II. Factual & Procedural History

Michael Sevanick was a firefighter for the City of Johnstown ("Johnstown") for twenty-nine years, from June 1, 1977 until September 10, 2006.[3] After retiring from the fire department, Sevanick worked at a car dealership. In 2015, he was diagnosed with kidney cancer. Sevanick sought treatment for approximately eight weeks, and returned to a part-time position with the dealership in May 2015. In 2016, he filed a claim for workers' compensation benefits, alleging that his cancer was caused by exposure to a carcinogen recognized as a Group 1 carcinogen by IARC during his time as a firefighter.[4] The Workers' Compensation Judge found in Sevanick's favor, and Johnstown appealed. Before the Workers' Compensation Appeals Board, Johnstown

---

[2] Although not at issue in this appeal, Act 46 also modified Section 301(c)(1) so as to bring its language in line with the requirements established by Section 301(f). *See* 77 P.S. § 411(1).

[3] During his time with the fire department, Sevanick rose to the positions of captain and assistant chief. He was never treated for cancer during his time as a firefighter.

[4] Sevanick sought both disability benefits for the period during which he was unable to work as well as medical benefits. *See* Workers' Compensation Appeal Board Opinion, 7/20/2019, at 1.

argued that Sevanick's claim was barred by Section 301(c)(2)'s 300-week manifestation requirement, which provides that

> whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease[.]

77 P.S. § 411(2). The Board found that Section 301(c)(2) did not apply, but rather that the limitations on Sevanick's claim were governed by Section 301(f), which provides as follows:

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting. Any claim made by a member of a volunteer fire company shall be based on evidence of direct exposure to a carcinogen referred to in section 108(r) as documented by reports filed pursuant to the Pennsylvania Fire Information Reporting System and provided that the member's claim is based on direct exposure to a carcinogen referred to in section 108(r). **Notwithstanding the limitation under subsection (c)(2) with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, claims filed pursuant to cancer suffered by the firefighter under section 108(r) may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease.** The presumption provided for under this

> subsection shall only apply to claims made within the first three hundred weeks.

77 P.S. § 414 (footnotes omitted) (emphasis added). The Board reasoned that Section 301(f) creates a new timeframe for cancer-related occupational disease claims made by firefighters. Because Sevanick raised his claim well within 600 weeks from his last date of employment as a firefighter, the Board concluded that the claim was timely.

On appeal, the Commonwealth Court agreed with this determination. The court initially recognized that in 2011, cancer claims were added to the list of occupational diseases for firefighters subject to the Act by virtue of Act 46. *City of Johnstown v. WCAB (Sevanick)*, No. 1156 C.D. 2019, 2020 WL 2187759, at *5 (Pa. Commw. May 6, 2020). It then considered Johnstown's argument that Sevanick's claim was untimely because he failed to prove that he was exposed to a carcinogen that could have caused his cancer within 600 weeks of the date he filed his claim petition. *Id.* Johnstown argued that it was error to use the last date of Sevanick's employment as a firefighter (August 1, 2006) as the date from which to calculate the 600 weeks because Sevanick did not establish that he was exposed to a qualifying carcinogen on that date. *Id.* The Commonwealth Court rejected this argument on the basis that the "triggering event" for purposes of Section 301(f) is not the date of disability or injury, but rather the claimant's last day of exposure to a known Group 1 carcinogen. *Id.* at *7 (citing *Fargo v. WCAB (City of Phila.)*, 148 A.3d 514, 521 (Pa. Commw. 2016)).

The court then turned to Johnstown's claim that Sevanick's petition should be denied because he was not disabled within 300 weeks of his last exposure to the carcinogen, as required by Section 301(c)(2). In support of its position, Johnstown cited *Szymanski v. Workers' Compensation Appeal Board (City of Philadelphia)*, No. 494

C.D. 2016 (Pa. Commw. Feb. 14, 2017) (non-precedential decision), in which the Commonwealth Court rejected the firefighter's argument that the discovery rule applied to extend the 300-week period of time for a claimant to obtain the benefit of the causation presumption contained in Section 301(f). Although the *Szymanski* court discussed some interplay between Sections 301(c)(2) and 301(f), the Commonwealth Court in this case distinguished that discussion based on the fact that Szymanski's cancer manifested before the effective date of Act 46. *Sevanick*, No. 1156 C.D. 2019, 2020 WL 2187759, at *7. Finding *Szymanski* inapplicable, the Commonwealth Court concluded that Sevanick was not required to file his claim within the 300-week period contained in Section 301(c)(2), but rather that he was afforded 600 weeks to do so pursuant to Section 301(f). Since there was no dispute that Sevanick filed his claim 490 weeks after his last date of employment, the Commonwealth Court found the petition timely.[5] *Id.*

Johnstown filed a Petition for Allowance of Appeal and this Court granted review to determine whether a firefighter making a claim under Section 108(r) must comply with the timing requirements of Section 301(c)(2).[6]

### III. Parties' Arguments

In service of its argument, Johnstown delineates its perceived parameters of both Section 301(c)(2) and Section 301(f). Johnstown's primary contention is that the 300-

---

[5] The Commonwealth Court further concluded that because Sevanick filed his claim more than 300 weeks after his last date of employment, he was not entitled to Section 301(f)'s statutory presumption. *Sevanick*, No. 1156 C.D. 2019, 2020 WL 2187759, at *7 (Pa. Commw. May 6, 2020).

[6] Johnstown also requested review of the calculation of Sevanick's weekly wage, which request was denied.

week period in Section 301(c)(2) is a "jurisdictional boundary" such that no injury - including Section 108(r) firefighter cancer claims - may be covered under the Act unless the disability or death from the occupational disease manifests within 300 weeks from the last date of employment. Johnstown's Brief at 13. Johnstown argues that in *Tooey v. AK Steel Corporation*, 81 A.3d 851, 856 (Pa. 2013), this Court rejected the notion that Section 301(c)(2) is a statute of repose and held that Section 301(c)(2) is strictly jurisdictional. Johnstown's Brief at 13-14. It is Johnstown's position that per Section 301(f), a claimant seeking to file a firefighter cancer claim is afforded 600 weeks in which to file the claim, but in so doing, the claimant must establish that the cancer manifested within 300 weeks of the last day of employment in order to establish that the claim is cognizable under the Act. *See id.* at 16-17, 26. Johnstown contends that the Commonwealth Court has consistently treated the time limitation periods in Sections 301(c)(2) and (f) as "distinct and separate." *Id.* at 24 (discussing *Fargo*, 148 A.3d at 519; *Szymanski*, 494 C.D. 2016 at *8).

From this premise, Johnstown argues that Act 46 does not alter the General Assembly's scheme in which Section 301(c)(2)'s terms control whenever any occupational disease is the basis for compensation. It notes that while the General Assembly amended other portions of the Act to resolve conflicts that would occur because of Act 46's terms, it did not amend Section 301(c)(2) to remove its application from claims for firefighter cancer raised under Section 108(r). *Id.* at 28. By way of illustration, Johnstown points to Section 301(c)(1), which provides that an injury may be compensable regardless of an employee's previous physical condition. Because Section 301(f) requires that a firefighter must be cancer-free before becoming a

firefighter for a viable claim thereunder, the General Assembly amended Section 301(c)(1) to provide that an employee's physical condition was irrelevant "except as provided under subsection (f)[.]" *Id.* (quoting 77 P.S. § 411(1)). Through Act 46, the General Assembly could have eliminated the application of Section 301(c)(2)'s terms to Section 108(r) claims, Johnstown maintains, but it did not and this Court cannot ignore its failure to do so. *Id.* at 28-29.

Johnstown rejects the suggestion that the use of "notwithstanding" in Section 301(f) acts to substitute the provision's 600-week filing limitation for Section 301(c)(2)'s 300-week rule. Citing the definition provided by Black's Law Dictionary and its use in contractual matters, Johnstown explains that "notwithstanding" means "irrespective," and that its use "does not make the superseding provision subordinate to the preceding one; it simply indicates that both are true[.]" *Id.* at 29. This is particularly the case, Johnstown contends, when the provisions addressed by "notwithstanding" are not mutually exclusive. *Id.* Sections 301(c)(2) and (f) are not, in Johnstown's interpretation, mutually exclusive because they do not serve the same purpose or have the same effect. Section 301(c)(2) is "controlled" by the manifestation of disease or death, which Johnstown notes is "completely out of a claimant's control[] and dictates whether the Act will apply to a claim ... resulting from occupational disease." *Id.* (citing *Tooey*, 81 A.3d at 865) (internal quotations omitted).

In contrast, Johnstown argues, the operation of Section 301(f) is "controlled" by the date a claim is filed (which requires an affirmative action by a claimant), and it serves as "a method of controlling the application of the presumption" by providing a filing limitation. *Id.* at 30. As such, Johnstown argues that the use of "notwithstanding"

in Section 301(f) indicates that the provisions operate exclusively from each other and that both can be applied in cases of firefighter cancer claims, with Section 301(c)(2)'s terms dictating whether a claimant can proceed with a claim under the Act, and Section 301(f) providing a filing limitation for the application of the presumption therein. *Id.* Applying this interpretation to the facts before us, Johnstown concludes that the Act does not apply to Sevanick's disability claim for firefighter cancer, as he was disabled more than 400 weeks after his last date of possible exposure to carcinogens.[7] *Id.* Johnstown urges this Court to reverse the Commonwealth Court's contrary conclusion and hold that Section 301(c)(2) applies in all instances where occupation is the basis for a claim under the Act. *Id.* at 30-31.

Sevanick argues that the plain language of Section 301(f) indicates the General Assembly's intent to create a distinct "two-tiered" limitations period for firefighter cancer claims occurring after the effective date of Act 46.[8] Sevanick points out that at the time firefighter cancer claims were added to Section 108, the General Assembly also enacted Section 301(f), thereby establishing a distinct limitations period for firefighter cancer claims. Sevanick's Brief at 13-14. Pointing to the use of "notwithstanding," he argues that the plain language of Section 301(f) reveals that the General Assembly

---

[7] Johnstown arrived at this figure by calculating the time between September 2006 (an approximation of Sevanick's retirement from the fire department) and March 27, 2015 (the date Sevanick became disabled from his job with the car dealership). *See* Johnstown's Brief at 30.

[8] Sevanick concedes that for firefighter cancer claims occurring before the effective date of Act 46, Section 301(c)(2)'s terms control and contends that the Commonwealth Court has consistently held this to be the case. Sevanick's Brief at 12-13 (citing *Caffey v. WCAB (City of Phila.)*, 185 A.3d 437 (Pa. Commw. 2018); *City of Warren v. WCAB (Haines)*, 156 A.3d 371 (Pa. Commw. 2017)).

intended the limitations period set forth in Section 301(f) to apply to Section 108(r) claims, to the exclusion of the terms of Section 301(c)(2). *Id.* at 14-15. Sevanick also relies on the Black's Law Dictionary definition of "notwithstanding" as meaning "irrespective of, despite; in spite of[,]" and further refines this aspect of his argument by pointing to the definition of "irrespective" as "without considering, not needing to allow for." *Id.* at 15 (citing *Irrespective*, Cambridge Dictionary, http://www.dictionary/cambridge.org/dictionary/english/irrespective). Thus, Sevanick reads Section 301(f) as providing that its terms are to be applied "without considering" the 300-week limitation period contained in Section 301(c)(2). *Id.* at 16. Sevanick emphasizes that the enactment of Section 301(f) marks the first time the General Assembly created a distinct limitations period for a Section 108 occupational disease. Thus, his proposed interpretation is in keeping with the "uniqueness" of the firefighter cancer presumption. *Id.* at 16-17.

Sevanick further disagrees with Johnstown's claim that the Commonwealth Court's decision in this case is inconsistent with its precedent. Challenging Johnstown's reliance on *Tooey*, he points out that Section 301(f) was not at issue in that case, as the claimant there was not a firefighter and had not made a claim under Section 108(r), thus rendering any pronouncement therein inapposite to the issue presently before the Court. *Id.* at 22. Despite the statement in *Tooey* that the General Assembly "did not intend the Act to apply to claims for disability or death resulting from occupational disease which manifests more than 300 weeks after the last occupational exposure[,]" Sevanick argues that neither a Section 108(r) claim, nor the distinct limitations period created for Section 108(r) claims, were at issue in *Tooey*, and so it would be myopic to

apply this holding to the present facts. *Id.* (quoting *Tooey*, 81 A.3d at 865). Further, Sevanick argues that *Fargo* and *Szymanski* support his position, as both cases involved Section 108(r) firefighter cancer claims and in both cases, the Commonwealth Court held that the discovery rule is not applicable to such claims and applied Section 301(f) to conclude that the claim petitions were not timely. *Id.* at 19-20.

Finally, Sevanick argues that Johnstown's proposed interpretation is contrary to the purpose of Act 46, which embodies a legislative acknowledgment of the hazards of firefighting and the regular exposure of firefighters to known carcinogens. *Id.* at 23 (quoting *City of Phila. v. WCAB (Sladek)*, 195 A.2d 197, 208 (Pa. 2018)). Sevanick contends that his proposed interpretation furthers this acknowledgment. *Id.* at 24. Not only does Johnstown's proposed interpretation run contrary to the legislative recognition of the dangerous nature of firefighting by further restricting access to workers' compensation benefits, but, Sevanick claims, it also violates the humanitarian purposes of the Act and vitiates the General Assembly's intent in Act 46 to benefit firefighters stricken with work-related cancers. *Id.* at 25.

## IV. Analysis

At issue in this appeal is the interpretation of Section 301(f). When presented with issues of statutory interpretation, this Court's standard of review is de novo and our scope of review is plenary. *Whitmoyer v. WCAB (Mountain Country Meats)*, 186 A.3d 947, 954 (Pa. 2018). We are mindful, as always, that the object of statutory interpretation is to ascertain the intent of the General Assembly, the best indicator of which is the plain language of the statute itself. 1 Pa.C.S. § 1921(a)(b); *Dep't of Labor & Indus. v. WCAB (Lin & E. Taste)*, 187 A.3d 914, 922 (Pa. 2018). Where statutory

language is clear and unambiguous, this Court must give effect to the words of the statute. *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020). When interpreting a statute, courts may not look beyond the plain meaning of a statute under the guise of pursuing its spirit. *Id.*; *see also Warrantech Consumer Prod. Servs., Inc. v. Reliance Ins. Co. in Liquidation*, 96 A.3d 346, 354 (Pa. 2014).

We begin by examining the language of Section 301(f), which provides as follows:

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting. Any claim made by a member of a volunteer fire company shall be based on evidence of direct exposure to a carcinogen referred to in section 108(r) as documented by reports filed pursuant to the Pennsylvania Fire Information Reporting System and provided that the member's claim is based on direct exposure to a carcinogen referred to in section 108(r). Notwithstanding the limitation under subsection (c)(2) with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, claims filed pursuant to cancer suffered by the firefighter under section 108(r) may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease. The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks.

77 P.S. § 414 (footnotes omitted).

We find no ambiguity in the terms of Section 301(f). Critical to our resolution of the question before us is the General Assembly's use of "notwithstanding." This Court understands the use of "notwithstanding" to be an unambiguous expression of the General Assembly's intent to distinguish the law applicable to the circumstances addressed within the "notwithstanding" clause from the law applicable to the circumstances that follow that clause. When interpreting a provision of the First Class City Business Tax Reform Act that provided, "**Notwithstanding a contrary provision of law of the Commonwealth**, ... every person engaging in any business in a city of the first class ... shall pay an annual tax at the rate or rates specified by the city council[,]" the Court explained that "[t]he meaning of the emphasized introductory language is straightforward: regardless of what any other law provides, first class cities are authorized by this act to collect a tax from every person engaging in any business within the city. *City of Phila. v. Clement & Muller, Inc.*, 715 A.2d 397, 399 (Pa. 1998) (emphasis in the original).

Here, the General Assembly's use of "notwithstanding" is an unambiguous indication of its intent to separate Section 108(r) firefighter cancer claims from Section 301(c)(2)'s operation. Thus, we interpret the use of "notwithstanding" to mean **regardless** of the 300-week requirement in Section 301(c)(2), claims brought pursuant to Section 108(r) may be filed up to 600 weeks after the last date of employment in the occupation that exposed the claimant to the cancer-causing agent. Through the use of "notwithstanding," the General Assembly removed Section 108(r) claims from the application of Section 301(c)(2)'s 300 week requirement in favor of the limitations period it created in Section 301(f). Section 301(f) distinguishes between the time period for

filing a claim (600 weeks after the last date of employment) and the application of the presumption, which is only applicable to claims filed within the first 300 weeks. The language is clear, and so our interpretation thereof must give it effect.

Johnstown's argument to the contrary is premised entirely on its understanding of *Tooey* as establishing Section 301(c)(2) as a jurisdictional bar that **all** claims must meet in order to be cognizable under the Act.[9] In *Tooey*, the plaintiff developed mesothelioma twenty-five years after he ended his career as a salesman of asbestos products. He and a similarly-situated party filed tort actions against various defendants, including their former employers. *Tooey*, 81 A.3d at 856. The employers sought summary judgment, arguing that the Act's exclusivity provision, Section 303(a), barred the claims. The trial court denied the motions, but the Superior Court reversed. *Id.* The case presented this Court with the question of whether the exclusivity provision of the Act applied to cases involving occupational diseases that manifest outside of the 300-week period set forth in Section 301(c)(2) so that the plaintiff was precluded from pursuing recovery through a tort action against an employer. *Id.* at 857. The parties offered competing interpretations of Section 301(c)(2), with the employers arguing, inter alia, that by its terms, Section 301(c)(2) acted as a statute of repose, placing a temporal limitation on a claimant's ability to seek any recovery, as opposed to a jurisdictional boundary of the Act. *Id.* at 862. This Court (as Johnstown recognizes) rejected this argument and concluded that the General Assembly did not intend the Act to apply to claims for disability or death related to occupational disease that manifest more than 300 weeks after the date of last exposure. *Id.* at 865.

---

[9] We note that Act 46 was enacted in 2011, two years before our decision in *Tooey*.

While in *Tooey* this Court held that claims subject to Section 301(c)(2) must meet the 300-week requirement to be cognizable under the Act, there is no basis upon which to extend this temporal pronouncement to claims that the General Assembly has expressly removed from Section 301(c)(2)'s terms, as is the case here. By providing a time period specifically for the filing of Section 108(r) firefighter cancer claims, and expressly providing that this period applies regardless of the 300-week period specified in Section 301(c)(2), the General Assembly manifested its intent that Section 108(r) claims stand apart from the occupational disease claims that fall under Section 301(c)(2) and that they are subject to Section 301(f)'s terms alone.

Johnstown cites the *Fargo* decision to buttress its claim that although the Commonwealth Court has ruled that the limitations periods in Section 301(c)(2) and Section 301(f) are "distinct and separate," it has never held that a claimant asserting a Section 108(r) claim does not have to satisfy both Section 301(c)(2) and Section 301(f). Johnstown's Brief at 24-25.[10] In *Fargo*, a workers' compensation judge denied a Section 108(r) claim because the claimant filed it more than 600 weeks after his last date of employment. Before the Workers' Compensation Appeal Board, the claimant argued that Section 301(f)'s 600-week period was an extension of Section 301(c)(2)'s

---

[10] Johnstown also cites *Szymanski v. WCAB (City of Philadelphia)*, 494 C.D. 2016 (Pa. Commw. Feb. 14, 2017), an unpublished decision, as further support of this position. The claimant in that case raised the same argument as did the claimant in *Fargo* (contending that Section 301(f) extended the manifestation - rather than filing - period). The Commonwealth Court interpreted *Fargo* as providing that a Section 108(r) claimant must satisfy **both** Section 301(c)(2) and Section 301 (f). *Szymanski*, 494 C.D. 2016 at *6. Although the court did not so state, the claimant's cancer manifested prior to the effective date of Act 46 and thus, it is of no relevance to the case before us. Moreover, its interpretation of *Fargo* is inconsistent with our and the Commonwealth Court's discussion of *Fargo* in this case.

300 week manifestation period, such that Section 301(f) merely required a claimant to establish that the disease manifested within 600 weeks, and that a claim could be filed outside of the 600-week period. *Fargo*, 148 A.3d at 518. The Board rejected this argument, reasoning that Section 301(f) created an independent filing period for Section 108(r) claims. The Commonwealth Court agreed, holding that Section 108(r) firefighter cancer claims are subject to a "two-tiered limitations period" that is wholly distinct from Section 301(c)(2). *Id.* at 520. In so doing, the Commonwealth Court characterized both Section 301(c)(2) and (f) as time limiting provisions, with Section 301(f) not only providing the 600-week temporal outer limit for the filing of a Section 108(r) claim, but also providing a 300-week temporal limitation for application of the presumption created by Section 301(f). *See id.* Because the claimant's claim was filed more than 600 weeks after the last date he could have been exposed to the hazardous workplace conditions, the Commonwealth Court agreed that his claim was untimely. *Id.* at 522.

The issue before the Court today was not before the Commonwealth Court in *Fargo*, and to its credit, Johnstown does not represent that it was. Rather, Johnstown suggests that *Fargo* illustrates the Commonwealth Court's understanding that the requirements of both Section 301(c)(2) and (f) must be met for a viable Section 108(r) claim. *See* Johnstown's Brief at 24-25. We disagree with Johnstown's reading of *Fargo*. On the issue of exclusive application of Section 301(f) to firefighter cancer claims, there is no ambiguity in *Fargo*.

Finally, to the extent that *Fargo* or its progeny left any room for doubt, we resolve the issue here. By its unambiguous terms, a claim by a firefighter under Section 108(r) of the Act is controlled by Section 301(f) and the limitation period in Section 301(c)(2)

has no application to the firefighter's claim. We have the benefit of clear and certain language in Section 301(f) and we interpret it as written.

Order affirmed.

Chief Justice Baer and Justices Saylor, Todd, Dougherty, Wecht and Mundy join the opinion.